UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DAVID R. BROWN,

                    Plaintiff,

v.                                                    Case No.  5:05-cv-227-Oc-10GRJ

JO ANNE B. BARNHART,
Commissioner of Social Security,

                    Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

Plaintiff appeals to this Court from a final decision of the Commissioner of Social

Security (the "Commissioner") denying in part his application for disability insurance

benefits and Supplemental Security Income payments.  (Doc. 1.)  The Commissioner

has answered (Doc. 9) and both parties have filed briefs outlining their respective

positions.  (Docs. 15 & 17.)  For the reasons discussed below, the Court finds that the

Commissioner's decision is due to be **REVERSED.**

## I.  PROCEDURAL HISTORY

On October 17, 1996, Plaintiff filed an application for disability insurance benefits

claiming a disability onset date of June 14, 1990. (R. 152-55.)[2]  Plaintiff also submitted

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

[2] Apparently, Plaintiff filed previous applications for a period of disability and disability insurance benefits on February 7, 1992 and May 17, 1995.  These applications were denied and are not at issue here.

an application for Supplemental Security Income.[3]  Both applications were denied

initially (R. 87-90), and upon reconsideration. (R. 93-96.)  Thereafter, Plaintiff timely

pursued his administrative remedies available before the Commissioner, and requested

a hearing before an Administrative Law Judge ("ALJ").  (R. 97.)  ALJ John Lischak

conducted hearings on June 17, 1998 (R. 640-53), December 9, 1998.  (R. 654-734),

and February 3, 1999. (R. 735-64.)  ALJ Lischak issued a decision unfavorable to

Plaintiff on February 22, 1999.  (R. 68-83.)  The Appeals Council remanded the case

back to the ALJ.  (R. 142-44.)  ALJ Arthur Stacy conducted a hearing on March 5, 2003

(R. 764-816) and then issued a decision partially favorable to Plaintiff on June 6, 2003.

(R. 12-23.)  Plaintiff timely filed a request for review with the Appeals Council.  (R. 627.)

The Appeals Council denied Plaintiff's request for review.  (R. 8-11.)  On May 12, 2005,

Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial

evidence.[4] Substantial evidence is more than a scintilla, i.e., the evidence must do

more than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the

conclusion.[5]

---

[3] The application for SSI was not included in the Record.  (R. 4.)

[4] *See* 42 U.S.C. § 405(g).

[5] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[6] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[7] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[8]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[9]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[10]

---

[6] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[7] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[8] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[9] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[10] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

The ALJ must follow five steps in evaluating a claim of disability.[11]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[12] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[13] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[14] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[15] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[16]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[17] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the

---

[11] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[12] 20 C.F.R. § 404.1520(b).

[13] 20 C.F.R. § 404.1520(c).

[14] 20 C.F.R. § 404.1520(d).

[15] 20 C.F.R. § 404.1520(e).

[16] 20 C.F.R. § 404.1520(f).

[17] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See Also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

4

national economy.[18] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[19]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[20] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[21]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[22] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[23] Only after the Commissioner meets this burden does the burden shift back

---

[18] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[19] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[20] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[21] Walker at 1003.

[22] Wolfe at 1077-78.

[23] *See id.*

to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[24]

## III. <u>SUMMARY OF THE RECORD EVIDENCE</u>

Plaintiff was forty-eight years old at the time of the ALJ's decision.  (R. 16.) Plaintiff has a high school education (R. 200, 769) and past work experience as an air conditioning service technician and building and maintenance laborer. (R. 213, 769-72.)

The ALJ determined that claimant suffers from an affective disorder and disorders of the back, discogenic and degenerative.  (R. 16.)   However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.   (<u>Id</u>.)

The ALJ found that Plaintiff was not entitled to disability insurance benefits because he retained the RFC to perform light work on or before December 31, 2005, the date Plaintiff was last insured for disability insurance purposes.  (R. 21, 22). However, the ALJ found that Plaintiff has been disabled since November 26, 2002, and thus, was eligible for Supplemental Security Income payments from that date.  (R. 21-23.)  In reaching this conclusion, the ALJ found that while Plaintiff was able to perform light work prior to November 26, 2002 his  "additional limitations since November 26, 2002" had "significantly eroded" his capacity for work and he had not retained sufficient residual functional capacity to engage in substantial gainful activity on a sustained basis which exists in significant numbers in the national economy. (R. 23.)

---

[24] *See* <u>Doughty</u> at 1278 n.2.

Plaintiff suffered a work-related injury on May 22, 1990 and subsequently had two back surgeries.  (R. 775.)[25]  Plaintiff was treated by George Kellis, M.D. from March 1995 to November 9, 1998.  On March 15, 1995, Dr. Kellis noted that a recent MRI showed a small bulge of C5 and C6, a left paramedian protrusion of C4 and disc dessication of C2 and C3.  (R. 252.)    On August 16, 1995, Plaintiff reported severe neck pain and low back pain.  Dr. Kellis noted that Plaintiff was "quite depressed" and "appears to be tearful in the room."  Dr. Kellis recommended pain clinic evaluation and opined that Plaintiff needs "psychologic evaluation and support as well as pain maintenance" and he doubted Plaintiff would "be able to return to gainful employment with ease." (R. 256.)  On June 7, 1996, Plaintiff reported improvement from injections in his lower back.  (R. 258.)  Dr. Kellis noted that "conservative management" was in order and prescribed Elavil at bedtime. (Id.) On September 16, 1996, Dr. Kellis opined that Plaintiff "is reaching maximum medical improvement." (R. 259.)  On November 1, 1996, Dr. Kellis noted no "real change" in Plaintiff's condition and opined that "[c]ertainly he did not appear to be able to return to any time of physical labor employment." (R. 260.) On January 13, 1997, Dr. Kellis noted that Plaintiff was still experiencing pain in the cervical spine and lumbar spine and showing evidence of major depression. (Id.) Dr. Kellis stated that he could extend his off time for an additional three months, at which point Plaintiff would certainly be reaching MMI. (Id.)  On April 28, 1997, Dr. Kellis did not believe that there was much more that he could do for Plaintiff but that he would extend his off time until August 1, 1997, awaiting the final disability decision. (R. 262.)  On October 13, 1997, Dr. Kellis noted that he could not further extend Plaintiff's off time

---

[25] At the hearing, Plaintiff testified about his injury and surgeries but the relevant medical records are not contained in the record on appeal.

because he believed Plaintiff had reached MMI. (R. 360.)  On November 9, 1998, Dr.

Kellis stated, "I have explained to [Plaintiff] that he is no longer a surgical candidate for

any aspect of his care.  I have asked him to find a family or primary care physician who

will continue to prescribe for him.  I will refill his prescriptions for six (6) full months today

giving him time to find someone else to assume the physician of record responsibilities."

(R. 410.)

In a Social Security Disability Questionnaire dated January 24, 1999, Dr. Kellis

opined that Plaintiff could stand and sit for a half hour at a time and up to two hours per

eight-hour workday; and lift two to three pounds occasionally and one pound frequently.

Dr. Kellis further found that Plaintiff could occasionally climb and balance but never

stoop, crouch, kneel or crawl.  He also noted limitations in reaching and pushing/pulling.

Dr. Kellis then opined that Plaintiff "is disabled from gainful employment" due to "severe

LBP." (R. 415.)

Loren Shapiro, Ph.D., performed a psychological examination of Plaintiff on June

3, 1996. (R. 278-79.)  Based on his examination, Dr. Shapiro opined that Plaintiff

appeared to be suffering from a "major depressive disorder" and that the depression

was the direct and proximate result of Plaintiff's industrial injury on May 22, 1990.  (R.

279.)  Plaintiff's symptoms of depression included diminished self-esteem, feeling down

and blue most all the time, anger, agitation, irritability, difficulties with concentration and

memory, spontaneous crying, and feeling tired most all the time. (R. 278.)  Dr. Shapiro

further opined that Plaintiff's injury from the depression negatively affected 50% of his

person as a whole, based on the AMA guidelines. (R. 279.)  However, in a teledictation

report transcribed on December 19, 1996, Dr. Shapiro opined that the depression, in

and of itself, would not render Plaintiff incapable of engaging in work-related activities. (R. 318-19.)

Sally A. Felker, Ph.D. performed a clinical interview and mental status examination of Plaintiff on December 12, 1996.  (R. 313-16.) Dr. Felker diagnosed Plaintiff with a primary diagnosis of Psychological Factors Affecting Physical Condition with an additional AXIS I diagnosis of Unspecified Depression.  (R. 315-16.)  Dr. Felker noted mild restriction in his ability to concentrate and attend to tasks and moderate restriction in his ability to carry out routine one and two step tasks due to physical problems.  (R. 315.)  Dr. Felker further noted mild to moderate restriction in Plaintiff's ability to relate to others and deal with the general public but no impairment in his ability to relate to work peers and supervisors.  (Id.)  Dr. Felker also noted that Plaintiff has a mild to moderate impairment in his capacity to tolerate stress associated with employment due to his depressed mood. (Id.)

There is a physical RFC assessment of record which was performed by a non-examining state agency physician on August 27, 1997.  (R. 348-55.)  Based on the medical records, the state agency physician found that Plaintiff could frequently lift and/or carry ten pounds and occasionally lift and/or carry twenty pounds; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; and push and pull without limitation.  (R. 349.)  He further found that Plaintiff should never climb, should only occasionally stoop or crouch and was limited in his ability to reach in all directions.  (R. 350-51.)

There is a mental residual functional capacity ("RFC") assessment of record which was performed by R. Kevin Goeke, Ph.D., a non-examining state agency psychologist, on September 2, 1997.  (R. 321-32.)   In view of the medical records,

Goeke found that Plaintiff did not meet a listing but that he had moderate limitations in the ability to carry out detailed instructions and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 321-22.)  In questionnaires dated June 17, 1998 and December 9, 1998, D. Schweid, M.D. found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing.  (R. 376-77.)  In a questionnaire dated February 2, 1999, Carolee K. Lesyk, Ph.D., found that Plaintiff did not have a impairment or combination of impairments that met a listing. (R. 416.)

Steven L. Weiss, Ph.D., performed a psychological evaluation of Plaintiff on November 26, 2002.  (R. 583-85.)  Dr. Weiss diagnosed Plaintiff with "Major Depression, Recurrent, Severe", an anxiety disorder, history of posttraumatic stress disorder, multiple physical complaints including neck, hip, back, knee and ankle and history of myocardial infarction.  (R. 585.)  In a medical source statement dated November 27, 2002, Dr. Weiss noted slight restriction in Plaintiff's ability to understand and remember short, simple instructions; moderate restriction in Plaintiff's ability to carry out short simple instructions, understand and remember detailed instructions, and carry out detailed instructions; and marked restriction in Plaintiff's ability to make judgments on simple work-related decisions.  (R. 586.)  Dr. Weiss further noted that Plaintiff had marked restrictions in his abilities to interact appropriately with the public, supervisors or co-workers and his ability to respond appropriately to changes in a routine work setting; and extreme restrictions in Plaintiff's ability to respond appropriately to work pressures in a usual work setting.  (R. 587.)  Finally, Dr. Weiss opined that Plaintiff would probably

10

need help managing funds effectively due to emotional instability, agitation, anxiety and depression.  (R. 585.)

A Medical Assessment of Ability To Do Work-Related Activities (Physical) was completed on February 24, 2003.  (R. 622-24.)  The physician who completed the Assessment opined that Plaintiff could occasionally lift twenty-four pounds and frequently lift twelve pounds; stand or walk up to two hours per eight-hour work-day ; and sit for four to six hours per eight-hour work-day.  The physician further found that Plaintiff could occasionally climb but never stoop, crouch or kneel.

At the March 5, 2003 hearing, Plaintiff testified that he had lower back pain, neck pain, depression and headaches prior to December 31, 1995.  (R. 775-84.)  Plaintiff testified that he talked to a psychologist once or twice a week for about four weeks in about 1993 or 1994.  (R. 780.)  Plaintiff testified that prior to December 31, 1995, he could stand for an hour or two over the course of a day; walk about ten to fifteen minutes without taking a break; sit for three hours a day, and lift about fifteen pounds. (R. 785-87, 790.)  With respect to household chores, Plaintiff testified that he would dust, help with dinner, fold laundry, and mow the grass on a riding lawn mower.  (R. 788-89.)

Plaintiff testified that his back condition has worsened since December 31, 1995 and that he has constant pain and muscle spasms.  Plaintiff testified that he has been taking morphine for about a year because of pain, goes to a pain clinic in Gainesville and that he has been having acupuncture for six months.  Plaintiff testified that he continues to be treated for depression and that he gets sad, moody and irritable. (R. 796.)  Plaintiff testified that he seems to "get in [his] moods" more frequently now than he did prior to 1995.  (R. 797.) He testified that he can occasionally lift fifteen to twenty

pounds, sit for thirty minutes at a time, stand for fifteen minutes and walk for fifteen to

twenty minutes.  (R. 798-99.) Plaintiff testified that he likes to fish but does not go very

often and that he has not looked for work.  (R. 799-800.)

## IV.  DISCUSSION

Plaintiff contends that the following finding is not supported by substantial

evidence:

> 9.      Prior to November 26, 2002, the claimant was able to perform light
> work, and therefore a finding of "not disabled" is directed by Medical
> Vocational Rule 202.21.  Examples of both light and sedentary jobs within
> his functional capacity prior to this date are such as those testified to by the
> vocational expert and set out in the body of this decision.

In concluding that Plaintiff was able to perform light work prior to November 26,

2002, the ALJ implicitly discounted the opinions of Dr. Kellis contained on "Claimant's

Social Security Disability Questionnaire" form (R. 412-15) dated January 24, 1999.  In

that form, Dr. Kellis opined that Plaintiff retained the RFC to perform less than sedentary

work.[26]  Specifically, Dr. Kellis found that Plaintiff could only stand and sit for a half hour

at a time and up to two hours per eight-hour workday; and could only lift two to three

pounds occasionally and one pound frequently.  Dr. Kellis further found that Plaintiff

could occasionally climb and balance but never stoop, crouch, kneel or crawl.  He also

noted limitations in reaching and pushing/pulling.  Dr. Kellis then opined that Plaintiff "is

disabled from gainful employment" due to "severe LBP." (R. 415.)

It is well established that substantial or considerable weight must be given to the

opinion, diagnosis and medical evidence of a treating physician unless "good cause" is

---

[26]  Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or
carrying articles like docket files, ledgers, and small tools.  The work is generally stationary at a sitting
position, but a limited amount of walking and standing may be necessary -- i.e., generally sitting 6 hours out
of an 8-hour workday and standing or walking 2 hours out of an 8-hour workday.  *See* 20 CFR
§§404.1567(a),  416.967(a); Social Security Ruling 96-9P, 1996 WL 374185 (SSA 1996).

shown to the contrary.[27]  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[28]

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.[29]  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.[30]

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; and (6) other factors

---

[27] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records.").  See also Edwards, 937 F.2d at 583-584; Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[28] 20 C.F.R. § 404.1527(d)(2).

[29] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

[30] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987).

which tend to support or contradict the opinion.[31]   However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.[32]

Here, the ALJ accorded lesser weight to Dr. Kellis' opinions because they were "apparently contrary" to Dr. Kellis' November 9, 1998 treatment note that stated:

> I have explained to [Plaintiff] that he is no longer a surgical candidate for any aspect of his care. I have asked him to find a family or primary care physician who will continue to prescribe for him. I will refill his prescriptions for six (6) full months today giving him time to find someone else to assume the physician of record responsibilities.

However, the fact that the treating physician concluded that Plaintiff was not a surgical candidate does not constitute substantial evidence to ignore the prior opinions of Dr. Kellis. Indeed, the statement by Dr. Kellis is not associated with any additional treatment, testing or examination of Plaintiff and therefore is of marginal relevance as to whether the Plaintiff is disabled. A patient might not be a candidate for surgery for a variety of reasons, including a determination by the treating physician that a patient's condition is so far advanced that surgery would not adequately treat the condition. Here, in the absence of any supporting explanation for Dr. Kellis' statement it was error for the ALJ to rely upon this statement as support for the ALJ's decision to ignore the other substantial records and findings of Dr. Kellis. Accordingly, the reason articulated by the ALJ is insufficient to justify giving less than substantial weight to the opinions expressed by Dr. Kellis in the form.

Throughout Dr. Kellis' treatment notes - and in contrast to the November 1998 treatment note - Dr. Kellis documented Plaintiff's severe neck and back pain and Plaintiff's depression and questioned whether Plaintiff could perform work-related

---

[31] 20 C.F.R. § 404.1527(d).

[32] Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984); see also 20 C.F.R. § 404.1527(d)(2).

activities. All of these treatment notes are consistent with Dr. Kellis' opinions stated on the "Claimant's Social Security Disability Questionnaire" form.  On August 16, 1995, Dr. Kellis recommended pain clinic evaluation and opined that Plaintiff needs "psychologic evaluation and support as well as pain maintenance" and he doubted Plaintiff would "be able to return to gainful employment with ease." (R. 256.)    On November 1, 1996, Dr. Kellis noted no "real change" in Plaintiff's condition and opined that "[c]ertainly he did not appear to be able to return to any time [sic] of physical labor employment." (R. 260.) On January 13, 1997, Dr. Kellis noted that Plaintiff was still experiencing pain in the cervical spine and lumbar spine and showing evidence of major depression. (Id.)

Because the ALJ failed to articulate specific reasons supported by substantial evidence for his decision to discount the opinions of Dr. Kellis, this matter is due to be remanded to the Commissioner for proper consideration of Dr. Kellis' opinions as a treating physician.  On remand, the Commissioner should give substantial or considerable weight to Dr. Kellis' opinions or in the event the ALJ chooses to reject Dr. Kellis' opinions, the ALJ must articulate specific reasons based on substantial evidence for giving lesser weight to his opinions, in accordance with the law of the Eleventh Circuit.[33]

---

[33]  Plaintiff also argued that Dr. Shapiro and Dr. Felker's reports supported a finding of total disability prior to November 26, 2002. This argument is due to be rejected for the following reason.

In finding that Plaintiff was disabled as of November 26, 2002, the ALJ relied on the November 26, 2002 evaluation by Dr. Weiss and explained as follows:

Since November 26, 2002, the claimant's capacity for the full range light work has been reduced by additional limitations that narrow the range of work he can perform.  Dr. Weiss stated that the claimant is slightly limited in his ability to understand and remember short, simple instructions; moderately limited in his ability to carry out short, simple instructions, understand and remember detailed instructions, and carry out detailed instructions; and has marked limitations in the ability to make judgments on simple work-related decisions. Furthermore, the claimant does not have the ability to respond appropriately to supervision,

(continued…)

## V. RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner, for an Administrative Law Judge to: (1) properly consider Dr. Kellis' opinions as a treating physician and (2) conduct any additional proceedings the Commissioner deems appropriate.

**IN CHAMBERS** in Ocala, Florida, on June 13, 2006.

GARY R. JONES
United States Magistrate Judge

Copies to:

The Honorable Wm. Terrell Hodges
Senior United States District Judge

Counsel of Record

---

[33](…continued)
co-workers, and work pressures in a work setting.  Dr. Weiss also reported that the claimant has marked limitations in interacting with the public, with supervisors, with co-workers, and responding appropriately to changes in a routine work setting.  Additionally, Dr. Weiss stated that the claimant has *extreme* limitations in responding appropriately to work pressures in a usual work setting.  Moreover, Dr. Weiss stated that the claimant would not be able to manage benefits in his won best interest.

However, neither Dr. Shapiro nor Dr. Felker (both of whom performed psychological evaluations of Plaintiff in 1996) found the same degree of limitations in Plaintiff's ability to perform work-related activities as Dr. Weiss. While Dr. Shapiro found that Plaintiff's injury from the depression negatively affected 50% of his person as a whole, based on the AMA guidelines (R. 279), he also opined that the depression, in and of itself, would not render Plaintiff incapable of engaging in work-related activities. (R. 318-19.)   Likewise, Dr. Felker diagnosed Plaintiff with Psychological Factors Affecting Physical Condition and Unspecified Depression but found no impairment in Plaintiff's ability to relate to work peers and supervisors and only a mild to moderate impairment in his capacity to tolerate stress associated with employment. (R. 315-16.)